### THE PRES. BRIARLY.[1]

### DOUGLAS v. THE PRES. BRIARLY.[1]

*(Circuit Court, E. D. Louisiana.  June 10, 1884.)*

1. TOW-BOAT AND TOWS.
   It is the duty of a tow-boat to see that her "tow" is properly made up, and secured with lines of proper strength.

2. SAME.
   If a person, in charge of one of the barges which make up a tow, throw off the lines without authority of the master of the tow-boat, and damage ensue, to that extent the barge is in fault.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

**3. SAME—ABANDONMENT OF TOW.**

If a man, in charge of a barge that has broken loose from a "tow" abandon her, and that abandonment contributed materially to the loss of the barge, it was negligence and fault on the part of the barge.

Admiralty Appeal. Action for loss of a barge against a tow-boat towing same; barge having broken loose from tow-boat, and afterwards sinking by coming into collision with same.

*W. S. Benedict* and *Richard De Gray*, for libelant.

*A. B. Philips* and *A. G. Brice*, for claimants.

PARDEE, J. The evidence leaves no doubt that the tug was in fault in several important particulars, to-wit: (1) In not seeing that the tow was properly made up, and secured with lines of proper strength. Half-inch lines, even new, are not sufficient for the securing together of large barges to be towed in the Mississippi river. See *The Quick-step*, 9 Wall. 665. (2) In not securing the "cabbage" barge with a line from the tug before undertaking to back the tow up the Mississippi river. (3) In not keeping clear of the "cabbage" barge after the same had broken loose from the tow, but, on the contrary, colliding with her, causing the injuries from which she was filled with water and her cargo lost.

The answer of claimants goes no further than a general denial of fault on the part of the tug, except that fault is alleged on the part of libelant as follows:

"But the truth is that the carelessness lies on the officer in charge of said barge, who unloosened the rope that was attached to said cabbage-barge stern, which was attached to the potato barge that said tug had in tow; that he took upon himself to loosen said line without any orders, causing the front line, which was a rotten line belonging to said barge, to break loose from the potato barge; that he never made any attempt to take a skiff to secure the said barge that he had caused to drift."

There can be no doubt that, notwithstanding the precarious and shiftless way in which the two barges were lashed together, and to the tug, the difficulty in handling the tow, resulting in the breaking loose of the "cabbage" barge, and her subsequent collision and loss, commenced with the throwing off of the new line—bed-cord—which lashed the sterns of the two boats together. This line was thrown off by the man in charge of the cabbage barge, who abandoned his own boat to accomplish the feat, and the separation of the boats followed so quick as to prevent his return to his own boat. The libel alleges that this line was thrown off at the order of the master of the tug, with the intention of placing the tug between the two barges. The master of the tug denies explicitly giving any such order, and swears to no intention, expressed or implied, to place the tug between the two barges. The evidence as to such order on the part of the libelant is the testimony of the man in charge of the cabbage boat, which is too conflicting and confused to be very reliable. In his examination in chief he states that he threw off the line because the master

of the tug ordered him to do so. On cross-examination he says as follows:

"*Question.* You say you let this line loose? *Answer.* When the tug— *Q.* Just answer my question and nothing more; you have a right, after you answer my question, to make any explanation you wish. Now, what made you let go that line that ran from the potato boat to the cabbage boat? *A.* I did not want it on there when his line was on it. *Q.* You did not want it there, you say? *A.* It would have done no good. It was across the tug. What good would it do there? It was not fastened to the tug, and I took the line and threw it off. *Q.* You had received no orders from the captain of the tug to let it loose? *A.* I don't know that the captain told me to let it loose."

Three days after, on being recalled, he answers to about the same effect. The fact is now conceded that the tug was not placed between the barges, whatever intention the master may have had; and it is clear, from all the testimony on the point, that at the time the line was cast off the master of the tug was 100 feet away, at the bow of the potato boat, looking after the fastenings of a head-line from the tug to the bow of the potato boat. I am satisfied that the man in charge of the cabbage barge threw off the line without authority, and to that extent the barge was in fault. See *Dutton* v. *The Express*, 3 Cliff. 462.

It also seems to me that, though not pleaded, the court should notice that the abandonment of the cabbage barge by the man in charge was negligent and faulty, and contributed materially to the loss of the barge; at least, to render fruitless efforts to prevent loss.

The exceptions and objections to the commissioner's report as to the amount of the damage are not well taken. The commissioner has given the lowest award compatible with the evidence; in fact, if he had been more liberal the court would not have interfered. As both parties were in fault contributing to the loss, the damages, under admiralty rules, must be divided. Let a decree be entered in favor of the libelant for one-half of the damages reported by the commissioner, to-wit, for the sum of $545.75, with 5 per cent. interest from January 15, 1885, and condemning claimant and his surety on the release-bond to pay the same. The costs of the district court, and for all evidence of claimant offered in this court and not in the district court, to be paid by claimant. The remaining costs of this court, with costs of the transcript of the record for appeal, to be paid by libelant.