## THE NEW YORK CENTRAL NO. 19.

### THE ANDREW J. WHITE.

(District Court, S. D. New York. December 28, 1903.)

**1. COLLISION—TUGS WITH TOWS MEETING—MUTUAL FAULT.**

Two tugs *held* both in fault for a collision between their respective tows in the night, in New York Harbor, about 500 feet off the Battery, while going in opposite directions, for being too near the Battery wall, for not keeping proper lookouts, for failing to give bend or other timely signals, and for proceeding into collision with substantially unabated speed.

**2. ESTOPPEL—REPRESENTATIONS.**

A libelant who was requested by the owner pro hac vice of a tug involved in a collision to proceed against her while in his possession, if it was intended to bring suit for the collision, and answered that no such suit was intended, is estopped to maintain a suit against such owner after he has surrendered possession of the tug, and after such delay as to render it doubtful whether, under its terms, he could recover on his policy insuring him against liability for damages by collision.

In Admiralty. Suit for collision.

Butler, Notman, Joline & Mynderse and Frederick M. Brown, for libellant.

Owen & Sturges, for New York Central No. 19.

Alexander & Ash, for William S. Limond.

ADAMS, District Judge. This action was brought by the libellant, the British & Foreign Marine Insurance Company, Limited, the underwriter of the cargoes of grain of two canal boats, the James Foley and the J. M. Bender, in May, 1900, to recover for the loss caused by a collision off the Battery about 12:30 A. M. of May 18, 1898. The boats were in tow, on the port side, of the tug New

¶ 2. Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.

York Central No. 19, then the New York Central Lighterage Company No. 19, which had two other boats on the starboard side. The Foley and the Bender came into collision with a car float in tow of the tug Andrew J. White, on her starboard side, off the Battery. The weather was clear. The respondent, William S. Limond, was at the time the owner, pro hac vice, of the White.

The No. 19 was bound out of the North River into the East River and the White in an opposite direction. Both were rounding the Battery, the White about 500 feet off, and the No. 19, at first, about 600 feet off. The tide was ebb, and both had some benefit from it, in the respective rivers, until they were nearly in collision. The No. 19 first saw the starboard light of the White and the light of the car float on the White's port side. No. 19 was showing her port light to the White. Her tow was not lighted. She blew a signal of two whistles to the White and starboarded. The White replied with a signal of one, when the vessels were 700 or 800 feet apart. Later the White blew a signal of two whistles. No. 19 blew alarm whistles and stopped and backed. After the White's signal of two, she showed both of her colored lights to No. 19 and stopped and reversed. The White was being steered by her pilot in the pilot house but he could not see approaching vessels, excepting when directly ahead, because he was not elevated above the cars on the float. The navigation was under the charge of a deck hand, who acted as lookout and gave directions to the pilot from an upper pilot house, above the one where the pilot was stationed. The collision occurred about opposite the Aquarium, the bow of the float coming in contact, with considerable violence, with the bows of the Foley and Bender. No. 19 afterwards took those boats up towards the Battery Wall, where they sunk but were afterwards raised and some small part of the cargo valued saved. The tows were at first approaching each other at a combined speed of about 8 knots, each contributing about an equal portion. Neither tug reversed until the collision was imminent, nor had either a lookout, attending exclusively to that duty.

Each tug was obviously in fault for being too near the Battery Wall, for not seeing the other tow in time and for proceeding into the collision with substantially unabated speed. Also for failing to give bend or other timely signals. The non-lighting of No. 19's tow did not contribute to the collision.

An important question in the case is, whether the respondent Limond should be held partly responsible for the results of the collision. It is urged in his behalf, that the libellant is estopped from obtaining a decree against him. From the testimony, it appears that he was insured in the Providence and Washington Insurance Company, under a policy dated the 26th of April, 1898. There was a great tangle of insurance interests, owing to various questions of liability under different policies. The underwriters of the different interests involved, endeavored to adjust their respective liabilities without success.

While the White was still in the possession of the respondent, he asked the agent of the libellant to proceed with the matter against

her if he intended to pursue it, in order that the respondent might resort to his insurance. Upon being assured by the agent that no such action would be taken, the respondent parted with the White and discharged the witnesses. He now claims that no recovery can be had against him, particularly, as by the delay, he has lost recourse against his underwriter.

The respondent's policy provided for indemnity in the following language:

"Such loss or damage as the Tug Andrew J. White may become legally liable for, from any accident caused by collision or stranding."

＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊

The policy further provided:

"It is also agreed that all claims under this policy shall be void, unless prosecuted within six months from the date of the disaster."

In this connection, the libellant urges:

"The provision of the policy providing that claims shall be void unless prosecuted within six months after a disaster, it would seem applies only to claims that arise at the time of the disaster, that is to claims for the physical injury of the tug, and not to collision claims at all. It is believed that the policy under a proper construction does not limit at all the time within which suit can be brought under the collision clause; but if the time limit is applicable to the collision clause, it certainly must be a limit which gives to the assured six months within which to sue the insurer, the six months of course beginning to run at the time when the assured's right of action accrues. That time has not yet come and will not until the respondent, Limond, has been compelled to pay the decree of this Court in this suit."

The loss is certainly covered by the policy but liability under the terms is uncertain. It seems that a proper construction of the policy would, in the event of the respondent being held, leave the underwriter liable for the results of this accident, notwithstanding the lapse of time, but there is a doubt and that doubt, so far as this case is concerned, should be resolved against the libellant. The respondent, relying upon the assurance stated, apparently failed to protect himself under his policy and there can be no doubt that he would be prejudiced in endeavoring to recover any loss he might have to pay, should the libellant be allowed to succeed here. I consider that there is sufficient in the circumstances of the case to sustain the estoppel. The general principle is stated in Boardman v. Lake Sh. & Mich. So. Ry. Co., 84 N. Y. 157, 182, as follows:

"The principle applicable to such case is laid down by Lord Denman, in Pickard v. Sears [6 Ad. & El. 474], as follows: 'The rule of law is clear that where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.' Nor is it essential to an equitable estoppel that the party should design to mislead, and it is sufficient if his acts were calculated to mislead and have misled another acting upon it in good faith and exercising reasonable care. [Manuf. Bank v. Hazard, 30 N. Y. 226.]"

Libel sustained as to No. 19, for half damages, with an order of reference, and dismissed as to the respondent Limond.