## THE FLUSHING.

### (District Court, E. D. New York. January 6, 1905.)

TOWAGE—LOSS OF TOW—INSUFFICIENT ANCHORAGE.

A tug, having six barges in tow to distribute at different points on Long Island Sound, left three of them at anchor, while it took others to their destination several miles distant. None of the barges carried an anchor, and two were made fast to the third, which was supplied by the tug with an anchor sufficient at the time; but a strong, though not unusual, wind arose soon after, and, the anchor dragging, two of the boats were driven on shore and wrecked. *Held*, that the tug was negligent in leaving the barges without sufficient protection against conditions which might have been anticipated; that the barge supplied with the anchor became, as to the other two, the agent of the tug, and its fault, if any, was that of the tug; that the barges were chargeable with fault which contributed to their injury in not being equipped with anchors, but that such fact did not relieve the tug from liability for half the damages, since it knew their condition, and also that many such boats were without anchors.

In Admiralty. Suits against tug for loss of tows.

Martin A. Ryan, for libelants.
James J. Macklin, for claimant.

THOMAS, District Judge. On December 9, 1902, the claimant's tug Flushing undertook to tow and distribute six boats to different points on Long Island Sound. The tow reached Field Point, off Greenwich Harbor, about 11 o'clock at night, where it remained till the morning. About 6 o'clock in the morning the tug left the tow at anchor, to deliver one of the boats at the Greenwich dock, a quarter of a mile away. Thereupon the tug returned to the tow, took off two other boats, and carried them to Portchester, which was several miles away, and delivered them at a dock which is approached by a tortuous stream. When the tug went there was little or no wind, but thereafter a southwesterly wind arose, so that the boats left at Field Point were unprotected. Under the influence of the increasing wind, the anchor dragged, and the three vessels went ashore on the beach, about a mile from the anchorage, where two of the vessels were wrecked, although the tug, returning, saved the Rogers, the third boat. Before leaving the boats, the captain of the tug learned that no one of them had an anchor, and thereupon

supplied one to the Rogers, weighing 210 pounds, as the claimant contends. Thereupon the Rogers was appointed by the tug, by the aid of this anchor, to hold the flotilla until the return of the tug. The Kilfoyle and the O'Callahan were behind the Rogers, side by side, and secured to her by a line some 10 feet long. The evidence is conflicting as to the custom of boats of the kind in question to carry anchors. It is beyond question that many of them did not carry anchors. In any case, the captain of the tug knew that these particular boats had none, and made arrangements accordingly. Whatever the weight of the anchor, it was insufficient to hold the tow against the southwest wind, which gradually became strong, but not violent.

The following conclusions are reached: (1) The tug anchored the barges at a usual place, where the bottom was favorable for holding anchors, and where there was a land protection against certain winds; but such place furnished no suitable shelter against southwesterly winds. (2) There was little or no wind when the tug started for Portchester, but the southwesterly wind that arose, although severe, was not unusual, and in the use of due care the captain of the tug should have expected and made provision therefor, and was negligent in leaving three loaded barges with an anchor of the weight that was furnished. (3) The tug used reasonable dispatch in going to and returning from Portchester. (4) The Rogers, for the purpose of operating the anchor, was the agent of the tug, and, if there was a neglect to pay out the line, it was the negligence of the tug. (5) Whether it was or was not the custom of the barges to carry anchors, they should have done so, as vessels of their size without an anchor are insufficiently equipped for navigation, and this omission contributed to the accident.

The present case presents the circumstance of the tug finding that no one of her three boats in tow had an anchor, whereupon she, according to her custom, furnished one, sufficient for immediate holding, but insufficient for weather not unusual, and likely to arise. It was quite well known to the navigators of the tug, who made a specialty of the business, that vessels like those in tow often carried no anchors. In such cases the custom of the tug was to furnish the anchor. Hence the tug was forewarned of the predicament in which she found herself and the three boats committed to her care. For such difficulty she made no provision, and left the tow without making proper provision. The detention was solely upon the business of the tug, although it was a departure that the boats in tow anticipated, and they contracted for towage with reference to such detentions for distribution of vessels along the Sound. If the boats were negligent in not having anchors, the tug was accustomed to towing such vessels, and made no prudent provision to make the tows safe.

Damages and costs will be divided.