THE FLUSHING.

(Circuit Court of Appeals, Second Circuit. April 2, 1906.)

Nos. 182, 183.

1. TOWAGE—LIABILITY OF TUG FOR LOSS OF TOW—INSUFFICIENT ANCHOR.

   A finding by the trial court that where barges being towed in Long Island Sound were without anchors, as was often the case, it was the custom for the tug to furnish them anchors when required, *held* sustained by the evidence, as also a finding that a tug was negligent in failing to furnish to barges in its tow, left while it distributed other tows, an anchor sufficient to hold them in ordinary weather which rendered it liable for their loss by dragging the anchor and drifting on the rocks.

2. SAME—CUSTOM OF TUG TO FURNISH ANCHOR FOR TOW—LIABILITY FOR NEGLIGENT USE.

   Where a tug furnishes an anchor and cable for the use of a tow which is without one, although in accordance with a custom in such cases, it is in effect, a loan, and the tug is not responsible for the manner in which the anchor is used by the tow.

   Lacombe, Circuit Judge, dissenting.

Appeals from the District Court of the United States from the Eastern District of New York.

These causes come here upon appeals from decrees of the United States District Court for the Eastern District of New York, dividing damages and costs in a case of towage. The opinion of the court below is reported in 134 Fed. 757.

La Roy S. Gove, for appellant.
Martin A. Ryan, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. The opinion of the court below fully and accurately states the facts whereon it reached the conclusion that the libelants' barges were negligent in not providing themselves with anchors, and that, in such cases, it was the custom of the tug to furnish an anchor for her tows, and that the tug was negligent in leaving the barges with an insufficient anchor, and that, if the captain of the barge Rogers was negligent in paying out the line of the anchor which was furnished by the tug, this was the negligence of the tug. The libelants have not appealed, and the faults charged against the tug by claimant, other than those sustained by the court, as above, are discussed by the court in its opinion and disposed of adversely to the contention of the claimant and in accordance with the weight of the conflicting evidence.

The questions here presented for review are whether it is customary for tugs to furnish anchors in such cases, and as to the alleged negligence in handling the anchor furnished by the tug. There is an irreconcilable conflict of testimony as to custom. These boats were Erie Canal scows or lakers, belonging in the ordinary class of coal barges. It appears to be customary for boats of this class which go down east or farther north than Long Island Sound to carry their own anchors. Five witnesses for libelants testify that such boats when running up the Sound never carry anchors, but that the tug always supplies one; five witnesses for claimant testify that it is customary for such boats to carry their own anchors; one of libelants' witnesses carried such an anchor on his own boat; another had occasionally seen them on such boats. One witness for claimant testified that, of the boats towed by him, nineteen, owned by one company, were fitted with anchors, and that his tugboat supplied the anchors for three boats belonging to another party, and that:

"Pretty much all the boats that run there [to Greenwich or Stamford] as a regular thing carry anchors. The outside boats that come in once in a while don't; the boats that navigate around the harbor don't."

Another witness for claimant testified that a few of the barges and coal boats were fitted with anchors, but that "it is a rare thing for them to have them."

Barber, the claimant, testifies as follows:

"Q. What is the custom as to boats plying on the Sound to Greenwich, Mamaroneck and other places east of that, in the carrying of anchors themselves? A. It is customary for them to have anchors. * * * Q. You have been going up there, as you say, for a number of years, haven't you? A. Yes. Q. Whenever you have had boats like the Kilfoyle and the O'Callahan, boats of that style, haven't you always supplied the anchors? A. Not always. Of course, when they don't have them, we have to, if we want an anchor. As a rule, they all have anchors."

A careful analysis of all the testimony shows the correctness of the conclusion of the court below "that vessels like those in tow often carried no anchor," and that "in such cases, the custom of the tug was to furnish the anchor." But we are unable to concur in the conclusion

of the court below that after the tug had provided the tows with a cable and anchor, "if there was a neglect to pay out the line, it was the negligence of the tug." There is no evidence of any contract to this effect or of any custom on the part of a tug to oversee or control the use of such appliances when furnished by it, or to insure their proper operation. Such a course would be manifestly impracticable, as in the case at bar, where the anchor was furnished for the express purpose of enabling the tug to leave one portion of the tow in charge of the men on board the scows while she was taking other boats to their destination under a contract for such detention for distribution, which the court below has properly found was assented to by the whole tow. It was, in effect, a loan of the anchor and cable to the rest of the boats, because they were unprovided with one, and, assuming it to have been sufficient for the required purpose, the men on the boats were responsible for the manner of its subsequent use. The question therefore arises whether the respondent was negligent in failing to furnish an anchor sufficient for the requirements of the barges on this occasion. The evidence conclusively shows that the captain of the barge Rogers, which carried the anchor, was grossly negligent. Although the anchor was provided with some 60 fathoms of 4½ inch cable, he had only some 50 or 75 feet thereof out when the barges started to drag, a mile away from the rocks, and he did not pay out any more for about an hour because "it was such a slow drag at the beginning," and he "had an idea it was enough out," and so, as testified to by claimant, he said:

"We didn't know we were dragging till we were so close to the rocks that we couldn't slack out any line; we didn't have room."

The findings of the court below on this branch of the case are as follows:

"The tug was forewarned of the predicament in which she found herself and the three boats committed to her care. For such difficulty she made no provision, and left the tow without making proper provision. * * * Whatever the weight of the anchor, it was insufficient to hold the tow against the southwest wind, which gradually became strong but not violent."

If this finding were based on the testimony of witnesses produced in court, we should be concluded thereby. But in the present case all of the testimony as to the sufficiency of the anchor, except that of the confessedly negligent captain of the Rogers, was taken out of court, and we have, therefore, critically examined the evidence on this point. There is much testimony to show that the anchor was sufficient to hold the barges if it had been properly handled. It weighed some 200 lbs., the usual weight, as testified to by seven witnesses. Three witnesses testify that no less than an 800 or 1,000 lb. anchor would be sufficient for such boats in ordinary weather or if there was any wind. The fact that each of these canal boats was about 100 feet long and carried a cargo of 250 to 300 tons, and did drag the anchor and drift ashore in a wind, which the evidence shows and the court finds "although severe, was not unusual," supports this testimony.

Therefore, while it is not entirely clear that the loss would have oc-

curred if the captain of the barge had not been negligent in failing to properly pay out the cable, we conclude with some hesitation that the preponderance of the evidence establishes the claim of libelants that the accident was primarily due to the negligent failure of the tug to furnish an anchor of sufficient size for the requirements of the tow, as found by the court below.

The decree is affirmed, with interest and costs.

LACOMBE, Circuit Judge. I dissent. I do not think the tug can be blamed because the boats, which should have had anchors of their own, but did not have them, mishandled the anchor which the tug left them to hold by. On the proofs, I am entirely satisfied that the anchor was heavy enough to hold them, if sufficient of the cable left with it had been payed out.