### BARBER v. HOME INS. CO. OF CITY OF NEW YORK.

(District Court, S. D. New York. May 8, 1907.)

INSURANCE—MARINE INSURANCE—TOWERS POLICY.

A marine policy of insurance on a towing tug, insuring against loss or damage for which the tug should become legally liable caused by collision or stranding, provided that the tug should be well found in anchors and the underwriter only responsible for injuries received by a tow while such

tow was alongside or attached to a hawser. *Held*, that there could be no recovery on the policy for the loss of tows while they were at anchor where they had been placed by the tug, and for which she had been adjudged liable on the ground that she had left them in an unsafe place and insufficiently anchored.

In Admiralty.

Peter S. Carter, for libellant.

Kneeland & Harrison, for respondent.

ADAMS, District Judge.  This action was brought by William E. Barber against the Home Insurance Company of the City of New York to recover upon a policy of insurance the sum of $2382.17 claimed to be due by reason of the same having been paid and incurred in consequence of a decree in favor of the owners of the canal boats Stella O'Callaghan and Thomas A. Kilfoyle against the steamtug Flushing, insured under a policy covering the period of 12 months from the 11th of July, 1902.  The provisions in the policy pertinent to the claims in this action were:

"Do make insurance  *  *  *  against any loss or damage for which the said tug may become legally liable, caused by collision and or stranding as hereinafter stated.  *  *  *

This Policy shall cover only the legal liability of the said tug for loss or damage and charges as herein provided.  First: When such legal liability of said tug shall have been incurred or caused by injury to any other vessel or crafts, their freights then being earned on cargoes on board of such vessels or crafts at the time of the disaster and or cargoes, by stranding and or collision while they shall be in tow of the said tug, either alongside or at the end of a hawser.  *  *  *

This Policy shall not cover any injury or damage to the hull, machinery, engines, tackle or fittings of the said tug, and shall not cover any injury or damage to any other vessel or cargo or freight owned wholly or in part by the insured.

This Company shall not be liable for any loss or damage under this Policy, unless the liability of the said tug for such loss or damage shall have been first determined by a suit at law or otherwise, if this Company shall so elect, and in case legal counsel shall be employed in defending any proceeding to test the liability of the said tug, the same shall first be approved in writing by this Company.  In all cases when the legal liability of the tug herein insured shall have been determined by any court of law, a certified copy of such decision shall accompany and form part of the proofs of loss.  *  *  *

All losses shall be payable in sixty days after proofs of loss and or damage and the amount thereof and proofs of interest and or liability of the insured satisfactory to this Company shall have been made and presented at the office of this Company; the amount of any and all indebtedness to this Company shall be first deducted therefrom, and in all cases of claim hereunder 200.00 Dollars shall also be deducted.

The insured as a part consideration for this insurance, agrees and expressly warrants:  *  *  *

Fourth. That the said tug shall at all times be commanded by and in charge of a duly licensed captain or pilot, and that she shall not take in tow a larger number of vessels or crafts than she can at all times safely handle and fully protect, and that in all cases where two or more vessels or crafts are towed together in the same tow they shall be so fastened, moored or lashed to each other with proper fenders and other appliances as to prevent their injuring one another by chafing, bumping, pounding or riding.

Fifth. That the said tug shall at all times during the continuance of this Policy be tight and well found in anchors, cable, rigging, tackle and apparel, as is

usual and customary, and that when the said tug shall lie at anchor in the night time, she shall show one or more lights in a conspicuous place, so as to warn and give notice to approaching vessels."

The owners of the two canal boats mentioned filed libels against the Flushing in the Eastern District of New York, which resulted in decrees for half damages against the tug. 134 Fed. 757. It was shown there that she took six barges in tow for distribution in Long Island Sound, and after reaching Field Point, off Greenwich Harbor, Connecticut, the boats having no anchors, supplied one for their use but it was small and proved insufficient to hold the flotilla in a moderate storm which subsequently arose. Three of the boats therefore went ashore and two of them were lost. It was held that the tow was negligent in not having anchors but it also held that the tug left the boats in an unsafe place insufficiently anchored and was therefore liable in half damages. This was affirmed on appeal. 145 Fed. 614, 76 C. C. A. 304. Thereafter a final decree was entered in the eastern district against the Flushing for $762.30 and $791.93 and the libellant was obliged in addition to these sums to pay out $891.23 for the expenses of the actions and, it is claimed, the further sum of $136.71 for witness fees and expenses. The foregoing after deducting $200 particular average, provided for by the policy, amount to $2382.17, the amount first mentioned herein for which the action was brought.

The respondent's defences are:

"(1) That there was a breach of the express warranty that the tug should at all times during the continuance of the policy be well found in anchors as is usual and customary, and that said Tug had been adjudged liable for failure to provide and furnish an anchor of sufficient size for the requirements of her tow.

(2) That the injuries to the canal boats for which the tug has been adjudged liable were not caused or incurred while said canal boats or either of them were in tow of said Tug, either alongside or at the end of a hawser."

These defences seem to be well sustained.

1. The Fifth provision in the policy with respect to the fittings of the tug requires that she shall at all times during the continuance of the policy "be well found in anchors."

The courts in the case of the Flushing, supra, found that the tug was negligent in not having sufficient anchors and was therefore in fault.

2. There can be no question that when this loss occurred, the lost vessels were not in tow of the tug, "either alongside or at the end of a hawser" and every other loss of the vessels of the tow is necessarily excluded under the terms of the contract.

There is no similarity between this case and that of Ferguson v. Providence Washington Ins. Co. (D. C.) 125 Fed. 141, cited by the libellant, with reference to the rule for interpreting policies of insurance favorably to the insured. That action was under the old form of Towers Liability Policy which provided:

"This insurance is to fully indemnify the assured for loss and damage arising from or growing out of any accident caused by collision or stranding resulting from any cause whatever to any other vessel or vessels, * * * for which said steamer or its owners may be legally liable."

It is evident that in making the present form of contract the underwriter sought to exclude the kind of liability which was covered by the old form and there does not seem to be any reasonable doubt that it has succeeded. The form of policy was before Judge Lowell in the circuit court for the first circuit (Munson v. Standard Marine Ins. Co. [C. C.] 145 Fed. 957), but nothing seems to have been determined there which would aid in the construction of the contract so far as the questions presented here are concerned.

The libellant urges that the respondent is estopped by its action in referring the matter to its lawyer for a defence and cites The New York Central No. 19 (D. C.) 127 Fed. 475, but that case does not aid the contention. There was no false representation or concealment of a material fact by the respondent here, or any other conduct legally prejudicial to the libellant, upon which an estoppel could be based.

The libel is dismissed.