### THE H. B. MOORE, JR.

#### (District Court, S. D. New York. July 22, 1907.)

TOWAGE—INJURY TO TOW—FAULT OF TOW IN FAILING TO MAKE HAWSER FAST.

    A steamer taken in tow by a tug, to be moved out from her loading berth, is responsible for the proper fastening of the lines to her own bitts, and where, in such case, the tow was injured by coming in contact with a pier by reason of the insecure fastening of one of the lines which slipped on the bitt, the tug is not in fault for her injury.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 25.]

In Admiralty.

Butler, Notman & Mynderse, for libellants.

Wing, Putnam & Burlingham and Jonathan H. Holmes, for claimant.

ADAMS, District Judge. On the 22nd day of September, 1906, the steamship Freke, a vessel of 190 feet in length and 30 feet beam, was lying on the south-west side of pier 36 of the Atlantic Basin, Brooklyn, and being loaded and desirous of going to sea, employed the tug H. B. Moore, Jr., to tow her through the gap, which was formed by piers 33 and 38. There was an intervening pier, 37, between the pier where the steamship was lying (36) and two piers, 34 and 35, on the other side of the basin inside of 33. All the inside piers were somewhat shorter than the exterior ones, which were 300 feet apart. The tug started about 10:20 a. m. to tow the steamer stern first with two hawsers, made fast respectively from her own stern side bitts to the steamer's side bitts at her stern. The tug attempted to proceed through the gap but in doing so the steamer was brought in contact with the east side of pier 33 and somewhat damaged, at first claiming about $3,000, but subsequently increased it by amendment to the extent of $6,500.

An action was brought by the libellants to recover these damages, charging the tug with fault in several respects but principally for not keeping the steamer clear of the pier, and improperly directing the casting off of the hawser which was made fast to the steamer's starboard quarter, and that if two hawsers were necessary in taking the steamer out, the tug was in fault for failing to supply the second hawser.

The tug's answer denied any negligence on her part and alleged that the accident was solely due to the negligence of those in charge of the steamship in not making the towing line properly fast and in not going ahead with her engines before she did.

From the testimony, it appears that the steamer had her full power of steam available for use but did not resort to it until it appeared that she was in close proximity to pier 33 and likely to collide with the east side thereof, when the pilot, seeing that a collision was eminent between that pier and the stern of the steamer, ordered her engine slow ahead but the master, who was also on the bridge and passing the orders from the pilot, directed it to be put half speed ahead and almost immediately full speed but these orders were too late and did not prevent the collision.

The tug ran her own line from her port side to the steamer's starboard side; it had an eye on the steamer's end which was placed on the steamer's starboard quarter bitts. The other line ran from the tug's starboard side to the steamer's port side. This was the steamer's line and had no eye. The distance between the sterns of the vessels was about 30 feet. The lines were fastened on double bitts or bollards on the steamer and used exclusively in pulling her out. After the vessels had turned somewhat and proceeded a short distance, the tug's hawser became slackened from the turning of the vessels to the port of the tug and useless for that reason and to avoid the danger of getting it in the propeller of one of the vessels, the tug's master ordered it to be taken in and thereafter the pulling was done with the line running from the starboard side of the tug to the port side of the steamer. When approaching pier 33 this line slipped, or "rendered" as it was called, on the steamer's bitts to an extent variously estimated

at from 10 to 30 feet. The latter was the judgment of the master and deck hand of the tug and confirmed by the pilot of the steamer to a certain extent. The latter said at first it was 10 or 12 feet but on cross examination stated he would not swear "that it did not render thirty feet." I judge that 30 is a measurably correct estimate. The tug's witnesses were watching the hawser closely and were more likely in view of their interest to have reached a correct judgment in the matter than were the others on the bridge of the steamer.

There is no doubt that the hawser slipped and that the fault of the collision was in the slipping of that line. It does not seem that the casting off of the other line had any effect whatever on the accident nor do I see any fault on the part of the tug in using the steamer's hawser. There was no trouble with the hawser for the purpose to which it was adapted excepting that it slipped and that was due to insufficient fastening on the part of those attending to it on the steamer. It was said that they made a sufficient number of turns but that is disproved by the fact that it slipped. It is evident that it was in their power to make it secure as is shown by the fact that when those on the stern of the steamer noticed the slipping, they almost immediately made it fast. It is urged that the slipping was the result of an extraordinary strain put upon the hawser by the tug but if there was such a strain, which I doubt, it was the effect of the steamer's failing to use her engine to assist in an obviously necessary manœuvre. It is said on the part of the steamer that it was the duty of the tug to give orders concerning the use of the steamer's steam but if that were the case, and the evidence does not make it clear, the question only arises was it a fault in extremis. Here the slipping of the hawser was the proximate cause of the accident. Any question of negligence in extremis with respect to the use of the steamer's engines is subordinate to that of the slipping of the hawser and it has so recently been decided by the circuit court of appeals that the towed vessel is responsible for the lines on her being properly made fast that it does not seem necessary to discuss the question further. I refer to the case of The Lyndhurst (D. C.) 129 Fed. 843, where I held that the tug was liable for the results of a collision between the tow and a wharf through the sliping of a hawser on the tow. There was but one man on the tow and I followed the principle that the tug is responsible for the make up of a tow of that character, including the fastening of the towing hawser, but the circuit court of appeals took a different view and held that the tug was free from blame, "because the hawser was not carefully adjusted by her master over the designated cleat, and that for his carelessness in that respect the tug is not liable." Id., 147 Fed. 110, 113, 77 C. C. A. 336.

The libel is dismissed.