### REILLY v. CORNELL STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit. April 7, 1914.)

#### No. 225.

1. TOWAGE (§ 11*)—INJURY TO TOW—CONTRIBUTORY NEGLIGENCE.

Where a tug used a new and apparently sufficient hawser, which it passed to two scows, the B. and G., with instructions to put the eye of the hawser on the bitt of the B., to make a round turn on the G.'s port bitt, and lead it out of the G.'s port chock, but the man in charge of the G., instead of following such instructions, merely led the hawser from the B. back of his bitt to the port chock, and, one scow being higher than the other, the constant rising and falling of the scows, due to the rough water, caused the hawser to cut through on the square bitt of the G., the tug could not be held liable for the loss of the G.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

2. TOWAGE (§ 11*)—INJURY TO TOW—LIABILITY.

Where a tug, after a scow which it was towing had broken loose, passed an extra line, which had been lying coiled up on the deck, to the scow, but, owing to the drifting of the scow, the deckhand of the tug was unable to fasten the hawser to the tug, and the hawser as a result was dragged into the water, permitting the scow to go on the rocks, the tug was not liable because of its failure to fasten the hawser to its bitt before passing it to the scow, since one of the eyes of the hawser was naturally at the bottom of the pile, while it would have been difficult to pass the hawser to the scow, if the other eye had been first placed over the bitt of the tug.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from a decree holding respondent liable for damages sustained by the scow Go Ahead in Tompkin's Cove a little way below the Highlands of the Hudson river, after breaking loose from respondent's tug Primrose, of which she was in tow. Reversed and remanded, with instructions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Amos Van Etten, of Kingston, N. Y., for appellant.
W. J. Martin, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The flotilla, consisting of several vessels, was proceeding up river in tow of respondent's tugs Crosby and Mead; the Primrose was a helper. About 5 p. m. of November 3d they were off Ver Plank's Point when the Primrose took off the Go Ahead and another scow, the Blarneystone, which were bound for Tompkin's Cove on the west side of the river. At the time there was a strong northeast wind blowing, accompanied by rain and the water was rough. The two scows were light, there is no evidence to show that the wind was blowing more than 20 miles an hour, the tug was of ample power, and if the hawser were sufficient there was nothing to indicate that there was any trouble to be apprehended in the undertaking. The District Judge based his finding that the storm was too severe to take the scows across solely on the circumstance that the rope "broke"; but, since we are satisfied it did not break, we reach a different conclusion, and are satisfied that there was no negligence in starting them across the river to their destination under existing conditions. While thus proceeding the hawser parted, and the two scows drifted over towards Stoney Point. The tug thereupon put about and tried to pick them up. She passed a hawser to one of them, which was made fast there; but owing to the drifting of the scows the deckhand of the tug was unable to fasten it on the Primrose, it ran into the water, and the scows went on the rocks.

Judge Holt held the tug in fault because the hawser was not sufficiently strong and because the Primrose, when trying to effect a rescue, did not fasten her hawser to her own bitt before passing it to the scows.

[1] The hawser was a brand new five-inch line, never used before. There is nothing to indicate it was not entirely sufficient for the use to which it was put. Nor is there any evidence of any latent defect. Had it not been misused, as will be pointed out below, presumably it would have taken the scows over without mishap. One line was used, instead of two, because the scows were to be landed in Tompkin's Cove, where the depth of water would not allow the tug to go as far inshore as the tow. There is evidence that this is usual and proper practice, and we find no fault in following it on this occasion. Preparatory to taking them off, the Blarneystone and the Go Ahead were made fast to each other. The Primrose then passed her towing hawser to them, with instructions to put the eye of the hawser on the bitt of the Blarneystone, to make a round turn on the Go Ahead's port bitt, and to lead it out of the port chock of the Go Ahead. There is no evidence, and we see nothing to indicate, that there was anything improper about this method of making fast. Whatever canting or slewing might result is unimportant, and it certainly was safer than fastening the towline to one boat only. If their own lines chafed and parted, this towline thus attached would still keep them together. The cause of the whole subsequent trouble was the failure of the man in charge of the

Go Ahead to follow the instructions given to him. Instead of taking a round turn around his own bitt, he merely led the hawser from the Blarneystone back of his bitt to the port chock. One scow was higher than the other, and the effect of the rough water was to cause a constant rising and falling of the scows. The result was that this brand new five-inch line was cut through on the square bitt of the Go Ahead. That this is what happened, that the line did not break, but was cut, is proved indisputably by the master of the Go Ahead. He says the jumping of the boats slacked the hawser and gave it a chance to seesaw; that it was cut on his bitt, and that it left the mark of seesawing on the bitt itself.

There is some conflict of testimony as to what was said when the towing hawser was passed aboard, but we find the evidence from the Primrose—viz., that the scowmen were told to take a round turn on the Go Ahead's bitt—more persuasive. It is manifestly the correct way. Any boatman should have known that was the thing to do, and it was in that way that the lines between the Go Ahead and the Blarneystone were made fast. Under our decisions in The Lyndhurst, 147 Fed. 110, 77 C. C. A. 336, and The Edwin Terry, 162 Fed. 309, 89 C. C. A. 19, the master of the tug cannot be held in fault because he did not himself go aboard the scows to see that his instructions as to making fast the hawser had been carried out.

[2] As to the alleged fault in the effort to save the boats after they went adrift, it might well be held that this was in extremis. But we are not satisfied there was any real fault about it. The Primrose, approaching the two scows, had one line available to pass to them. This was her own head line, lying on the deck as an extra line, available for whatever service it might be required to subserve. It had an eye at each end for convenience of use. Surely it was not negligence to have this line coiled up on deck till wanted, without either eye over a bitt. When coiled up, one eye would naturally be at the bottom of the pile. It was rope, not twine, the bottom eye could not be caught hold of and pulled out from under the pile. We do not see how *it* could be passed over a bitt until after most of the superimposed coils had been paid out. If the eye on top of the coil had been first placed over a bitt, it is difficult to see how the bight of the rope could be passed over to the scows. The natural thing to do was to pass the free eye to the scow, and when it was once placed on a bitt there to try and make fast the line on the tug. This is precisely what was done, the deckhand passed the top eye out to the scows, and as the line was running off he did succeed in making two turns around the Primrose's bitt. This was not sufficient to hold, and before he could make other efforts, manifestly more or less dangerous, the line was dragged from the tug falling into the water.

The decree is reversed, with costs of appeal, and cause remanded, with instructions to dismiss the libel, with costs.