### DAILEY et al. v. CARROLL et al.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

#### No. 74.

1. SHIPPING ☞41—DEMISE BY CHARTER—HARBOR SCOW.

An oral charter of a scow having no motive power for harbor use, even though the owner sends with it a "master" in his own pay, constitutes a demise, and makes the charterer a bailee.

2. SHIPPING ☞54—CHARTER OF SCOW WITH MASTER—LIABILITY FOR NEGLIGENCE OF MASTER.

An owner of a scow, without motive power and used for harbor business, who lets his boat and man as master to a chartered owner pro hac vice, thereby, in the absence of special agreement to the contrary, represents that the man is reasonably competent to attend to the care or internal economy of the boat; and customary cleaning, pumping, mooring, and watching, including watching her lines, are parts of such care, and as between the owner and charterer the owner is liable for any injury to the boat, or by the boat, by reason of the negligence of her master in caring for her.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by John D. Dailey and De Witt C. Ivins against William F. Carroll and the City of New York. Decree for libelants against respondent Carroll, and he appeals. Affirmed.

Dailey & Ivins orally chartered from Carroll the scow Edna L. Woods, at a price that "included the captain." This "captain came with the scow," was not paid by the charterer, and there was no arrangement that charterer could discharge him. Carroll admitted that he hired and paid the man. Libelants used this and many other scows in receiving and transporting to proper places of disposition rubbish and refuse gathered in the city of New York. Such scows were loaded under a dump on a pier in the East River.

While lying partly laden under the dump, and because her lines were improperly made fast, or not timely adjusted, the tide careened the Woods until her load slid off into the slip. The court below found that maladjustment of lines was the fault of the scow master, in that he did not watch them and the tide, but unwarrantably absented himself from the scow (where he lived). By contract with the city, libelants were obliged to dredge from the slip what had been dumped off the scow, and filed this libel to recover from the scow owner such dredging expense, alleging that during all the chartered period the scow had "a master in charge to look after the loading of said [scow] and to care for her as agent and servant of [Carroll] while engaged in the work" of (inter alia) receiving cargo. This allegation the answer of Carroll specifically admitted, notwithstanding which he denied all liability, and under the Fifty-Ninth rule in admiralty (29 Sup. Ct. xlvi) impleaded the city of New York, alleging that the loss of the cargo and the consequent cost of dredging was proximately caused by the negligence of the city's employés in

sundry particulars not here necessary to mention. The trial judge deemed the allegations against the city not proven and dismissed the claim. As no assignment of error complains of such dismissal, the matter will not be considered further.

The court below entered decree requiring the scow owner to pay the expense caused by the aforesaid dumping of cargo, on the ground that the scow master, when he negligently left his lines in improper and dangerous condition, was the servant and agent of the owner (i. e., the respondent), who thereupon appealed from said decree.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Mark Ash and Edward Ash, both of New York City, of counsel), for appellees Dailey and Ivins.

Lamar Hardy, Corp. Counsel, of New York City (Terence Farley and Charles J. Nehrbas, Asst. Corp. Counsel, both of New York City, on the brief), for appellee city of New York.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above).    [1] There is no doubt that the oral charter of the scow Woods, even though the owner sent with it a "master" or laborer in his own pay, constituted a demise, and made the charterer a bailee. The Willie, 231 Fed. 865, 146 C. C. A. 61. This holding, repeatedly announced by this court in cases of which Hastorf v. Long, etc., Co., 239 Fed. 852, 152 C. C. A. 638, is a recent instance, has always been in respect of boats with no motive power, incapable of navigation in the sense of independently pursuing a course, and depends ultimately on the fact, commonly known, that the so called "captains" of such craft are no more than laborers or deckhands, who cannot reasonably be looked upon as are shipmasters exercising a real command, based on statute, custom, and historic law.

The single question argued is whether under such a charter the scowmaster for any purpose, or in respect of any duty, remained the employé and therefore the agent of the man who alone had hired and could have discharged him—i. e., the scow owner. Whether under the pleadings as above outlined the point can be taken may well be doubted; but, as the matter has been discussed without any reference to the pleadings, we shall decide what the parties intended to submit.

[2] The evidence shows the charterer in absolute control and entitled to direct the navigation and employment of the vessel. These are the indicia by which the nature of the charter party is tested and decision reached as to whether it is a demise or not. United States v. Shea, 152 U. S. 178, 14 Sup. Ct. 519, 33 L. Ed. 403. They do not conclude the point argued. That point may be illustrated by asking what was made the subject of the bailment, or what came to the bailee? Not the bare boat, but the boat and man; and just as the boat was impliedly warranted seaworthy, so the man was impliedly represented competent and careful to take care of the boat; he existed and was supplied for that purpose.

It is, we think, impossible to lay down any hard and fast definition as to what is comprised in the phrase "caring for a boat." To do so would require consideration of contingencies perhaps unforeseeable, and certainly not suggested by anything in this record. Cases must largely depend upon special facts; but we may and do hold that an owner, who lets his boat and man to a chartered owner, pro hac vice thereby, in the absence of special agreement to the contrary, represents that the man or men who go with her are reasonably competent to attend to the care or internal economy of the vessel in question, and further that customary cleaning, pumping, mooring, and watching are parts of such care, and watching a vessel includes watching her lines. As to mooring, cf. The Lyndhurst, 147 Fed. 110, 77 C. C. A. 336, for the rule as to fastening tow lines.

If the man whom the owner pays and furnishes for this purpose fails (for example) to watch and arrange his lines according to the exigencies of the tide, he fails to serve the charterer just as much as the boat would fail to serve, should she be unseaworthy through no fault of the charterer. Third persons may, of course, regard charterers such as these libelants as owners, and the crew as the charterer's crew; but, as between the parties to the contract of charter, the question may always be asked: For whom was a given employé acting when the act complained of occurred?

The point is not without direct authority. Hastorf v. Hudson, etc., Co. (D. C.) 110 Fed. 669, we affirmed upon the opinion of Judge Addison Brown, 114 Fed. 1019, 52 C. C. A. 566. That case covers the point here presented. In Hastorf v. Long, etc., Co., 239 Fed. 854, 152 C. C. A. 638, we said, of a vessel under a charter precisely like the present one:

"Between the owner and the charterer in cases of such boats [i. e., harbor craft without motive power] the former is liable for any injury *to the boat* by reason of the negligence of her master in caring for her."

There can be no difference between injury *to* the boat caused by her master's negligence and injury by the boat similarly occasioned.

We have not overlooked Gibson v. Manetto Co., 194 Fed. 331, 114 C. C. A. 291. That case relates to an entirely different class of vessels; our decisions have, as above indicated, rested on the nature and exigencies of harbor business only. The case of The Carroll, 248 Fed. 475, —— C. C. A. ——, decided this day, marks the different result when the laborer is chosen by the charterer. Hahlo v. Benedict, 216 Fed. 303, 132 C. C. A. 447, and cases cited, covers the demise of a navigating vessel.

Decree affirmed, with interest, and costs to libelants. No costs to the city of New York.