## THE JUNIOR.

(Circuit Court of Appeals, Second Circuit. February 6, 1922.)

Nos. 175-179.

1. **Shipping** ⟳54—**Charterer of barge and crew liable for damage to barge only for negligence.**

Where the charterer chartered a barge and its so-called master, who was the only member of its crew, and who was appointed and paid by the owners, the so-called master remained the agent and representative of the general owner, in so far as the care of the boat or its internal economy was concerned, and the charterer can be held liable only on the ground of his negligence.

**Shipping** ⟳54—**Leaving barge moored at dangerous berth in face of storm warning held negligence.**

A charterer was negligent in leaving the chartered barge moored at an exposed berth, which was unnecessarily dangerous, after storm warnings and the conditions of weather and ice in the river became known to the charterer.

3. **Shipping** ⟳54—**Absence from barge of owner's master held negligence imputable to owner.**

Where the master of the barge appointed and paid by the owner remained in charge of the barge after it was chartered, his negligence in absenting himself from the barge while it was moored in a dangerous position and exposed to a storm, of which warning had been given, was imputable to his employer, the owner.

Appeals from the District Court of the United States for the Eastern District of New York.

Suits in admiralty by the Tice Towing Line, owner of the tug Ticeline, against the derrick lighter Junior; by the National Lead Company against the derrick lighter Junior and L. Boyer's Sons Company; by the L. Boyer's Sons Company, owner of the steam lighter Amelia, against 500 tons of oil cake, etc., and the National Lead Company; by the National Lead Company against the Junior; and by the L. Boyer's Sons Company against the National Lead Company and Charles A. McNeill and J. Lester Mack, trading as the McNeill Lighterage Company. From a decree awarding salvage and damages primarily against the National Lead Company (270 Fed. 983), that company appeals. Reversed, with directions to enter a decree charging the loss against the National Lead Company and the Boyer's Sons Company in equal shares.

These causes all arise from one occurrence. The lighter Junior, a dumb barge with a crew of one man, belongs to Boyer's Sons; they orally time-chartered boat and man to McNeill, who immediately turned her over at an advanced rate to National Lead Company. That company loaded the Junior, and directed that she be moored at what is known as the "Gas House Dock" (on the Brooklyn side of East River, just below the Navy Yard Basin), which

<hr>

⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

faces somewhat to the east of north.   The lighter had lain there several days, doing nothing, when on February 3, 1920, at 4:37 p. m., a "northeast warning" of storm was hoisted by the United States Weather Bureau.   At 10:45 a. m. on the following day the warning changed to that for a northwest storm. On the afternoon of February 4th, and thereafter until daylight of February 5th, the wind was steadily northeast, the temperature was considerably below freezing, the wind increasing, with a maximum of about 33 miles, from the northeast, and there was much ice in the river.   A heavy sleet storm prevailed, which changed to snow on the morning of the 4th, and changed back to sleet between 10 and 11 p. m. of that day.   The Junior was properly moored, and about 1 a. m. of February 5th was seen by a night watchman still fast to the wharf.   At some time between that hour and approximately 3:30 a. m., she broke adrift, after pounding and injuring the wharf edge, went down the river on the tide, and was salved in a damaged condition; her cargo was also injured.   There resulted these suits, which on this appeal present one question: How shall liability be apportioned for the salvage service rendered and the damage done to boat and cargo?   The court below fixed responsibility for all expense and damage upon the National Lead Company, which appealed.

Theodore L. Bailey, of New York City (George A. Washington, of New York City, of counsel), for appellant.

Frederick W. Park, of New York City, for appellee Boyer's Sons Co.

Park & Mattison, of New York City (Henry E. Mattison, of New York City, of counsel), for certain salvors.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above).   There are presented no new or doubtful questions of law.   The extent of damage is substantially agreed upon, and the salvage award is so plainly moderate that we do not further consider it.   Question is made as to whether National Lead Company, on chartering the Junior, agreed to return her in like good order and condition as when received.   We find as a fact that no such contract was made, although, as will appear, the exact form of words used in hiring the lighter is not controlling.

[1] The applicable law is this: Lead Company chartered the boat, and the so-called captain came with her; he was appointed and paid by the owners, Boyer's Sons; consequently the charter was exactly that of The Willie, 231 Fed. 865, 146 C. C. A. 61.   Whether it would make any difference if there had been a specific agreement to return in like good order and condition need not be considered, for that agreement was never made; but on this subject see Mulvaney v. King, 256 Fed. 612, 167 C. C. A. 642, and Schoonmaker, etc., Co. v. Lambert (C. C. A.) 268 Fed. 102.

The charter being what it was, National Lead Company can be held liable only on the ground of negligence.   Harms Co. v. Upper Hudson, etc., Co., 234 Fed. 859, 148 C. C. A. 457.   The relation between the Junior's owner and her charterer was exactly that exhibited in Hastorf v. Long, 239 Fed. 852, 152 C. C. A. 638, and Dailey v. Carroll, 248 Fed. 466, 160 C. C. A. 476, viz. although the charterer became owner pro hac vice, the so-called captain remained the agent and representative of the general owner, in so far as the care of the boat or the internal economy of the vessel was concerned.

[2] This doctrine must be applied to the following further findings

of fact: The weather, and the condition of ice in the river on February 4th and thereafter, made the Gas House Dock an exposed and unnecessarily dangerous berth for the Junior. This fact was known to the National Lead Company, whose own wharf was nearby, as was its own tug. Other vessels had removed, on account of weather, from the wharf where the Junior lay. Thus the owner pro hac vice—i. e. National Lead Company—knew of the Junior's danger, had means of relieving it, was under a duty to relieve it, and failed so to do. This was negligence.

[3] On the other hand, we find that, before she broke away, the master of the Junior had persistently absented himself from his boat for some time, probably as much as two days; he was not caring for her, and, if he had so cared and been competent, he would have reported her dangerous berth, and sought the safer place to which he was entitled. This was negligence attributable to his employer—the owner. It results that all the consequences of the drifting, injury, and rescue of the Junior and her cargo should fall upon the National Lead Company and Boyer's Sons Company in equal shares.

The decrees appealed from are reversed, and the cause remanded, with directions to enter decrees in conformity with this opinion. Appellant, National Lead Company, will recover the costs of this court as against Boyer's Sons Company. No other costs in this court. The costs of the court below will (in the decrees to be entered) be settled in conformity to the principles of a division of damages, or apportionment between two tort-feasors, as the case may be.