## THE RAYMOND M. WHITE.

### SIMMONS TRANSP. CO. v. WRIGHT & COBB LIGHTERAGE CO.

(District Court, E. D. New York. June 13, 1923.)

1. Shipping ⬤⟿58(2)—Letters admissible as tending to corroborate testimony as to verbal charter.

In libel by the charterer of a barge for the sinking of the barge while under verbal charter to respondent, letters and correspondence between the parties *held* admissible as corroborating the testimony of libelant's officer as to the terms of the verbal charter, though libelant's letter of confirmation was not replied to by respondent, and such testimony was also admissible as showing the general custom prevailing between the parties as to such charters.

2. Shipping ⬤⟿39—Charter construed more strictly against charterer dictating terms.

A charter, the terms of which are dictated by the charterer, must be construed more strictly against him.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Shipping ⬤⟿54—Bailee of vessel liable only for negligence, under requirement for return in same condition, less wear and tear.**

A bailee for hire under a charter party should not be made an insurer by implication, but only by clear and explicit language, and the terms of a charter requiring the return of the vessel in the same condition "as it is in now, less ordinary wear and tear," makes the bailee liable only for its own negligence.

**4. Shipping ⬤⟿54—Hirer of barge, captain provided by libelant, not liable for loss because barge not pumped.**

Under a charter party for the hiring of a barge in charge of a captain furnished by libelant, whose duty it was to care for the barge, and among other things to attend to the pumping of said barge, *held*, that the respondent was responsible only for watching the cargo, and not for watching the boat; that it was the duty of the captain, as libelant's representative, to determine whether the boat was in safe condition for the night. The respondent, having provided a safe berth and not having overloaded the barge, was not liable for sinking of the barge, in absence of the captain, due to failure to pump.

**5. Shipping ⬤⟿58(2)—Hirer of barge not liable for negligence under evidence.**

Evidence *held* insufficient to show that respondent, bailee for hire of a barge under charter party, was liable for negligence in not providing a reasonably safe berth, or for negligence in overloading such barge.

**6. Shipping ⬤⟿58(2)—Bailee for hire, having shown due care, not required to show cause of sinking.**

Where the bailee for hire of a barge showed that the sinking of the barge was not due to its negligence in failing to provide a reasonably safe berth, and not due to its overloading, the respondent was not required to show the cause of the sinking, but the burden was then cast on the libelant to show respondent's negligence.

In Admiralty. Libel by the Simmons Transportation Company, charterer and bailee of the covered lighter Raymond M. White, against the Wright & Cobb Lighterage Company. Libel dismissed.

Frederick W. Park, of New York City, for libelant.

Foley & Martin, of New York City, for respondent.

CAMPBELL, District Judge. This is a suit in admiralty to recover for the damages caused to the barge Raymond M. White from sinking while under charter to the Wright & Cobb Lighterage Company. The barge Raymond M. White was owned by William Simmons and Harry White, and was under a demised charter to the Simmons Transportation Company.

On the 29th day of November, 1920, the libelant, Simmons Transportation Company, chartered the said barge Raymond M. White to the respondent Wright & Cobb Lighterage Company by a verbal charter, and at the time of the making of said verbal charter the said libelant Simmons Transportation Company, by its secretary and treasurer, agreed to confirm the same in writing, which it did by a letter dated November 29, 1920 (Libelant's Exhibit 5), which reads as follows:

"Messrs. Wright & Cobb. 17 Battery Place, New York City—Gentlemen: This will serve to confirm charter to you of the covered barge R. M. White, with captain, at the rate of eighteen dollars ($18.00) for each and every day, time commencing to-morrow morning, November 30, 1920, and to continue until said barge is returned to us within the towing limits of New York

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harbor, at place designated by us, in the same condition as it is in now, less ordinary wear and tear.

"It is agreed that you are to be responsible for wharfage, watching, towing, damage, cargo insurance, and all other expenses that may accrue on this barge while under charter to you. It is also agreed that the captain is entirely under your control and acting as your agent, should you require him to sign a receipt for cargo loaded.

"It is understood that the barge is to be used in the insurance limits of New York Harbor. The barge is now at the north side of Pier 44, Brooklyn.

"Kindly acknowledge receipt of this confirmation and oblige.

"Very truly yours,          The Simmons Transportation Company,
"DTL/C                                    Sec'y & Treas."

[1] This letter was never replied to in writing by the respondent, and therefore the charter remained a verbal charter; but I have admitted in evidence this letter as corroborating the testimony of the secretary and treasurer of the Simmons Transportation Company as to the terms of the verbal charter. I have also admitted in evidence the letter sent by the respondent to the Simmons Transportation Company (Libelant's Exhibit 6), and the letter sent by the Simmons Transportation Company to the respondent (Libelant's Exhibit 7), all being confirmations of charters formerly made between the said parties, and showing the general custom prevailing between them as to such charters, as corroborating the testimony of such secretary and treasurer.

[2] The charter was in the words of the Simmons Transportation Company, the libelant, and must be construed more strictly as to it than as to the respondent. Libelant bases its claim upon the provision for the return of the barge "in the same condition as it is in now, less ordinary wear and tear," and the further provision referring to respondent:

"You are to be responsible for wharfage, watching, towing, damage, cargo insurance, and all other expenses that may accrue on this barge while under charter to you."

[3] The courts have differed in their construction of charter parties with reference to the words "in the same condition as it is in now, less ordinary wear and tear," when used therein; but I believe that the weight of authority holds that in no case should a bailee for hire be made an insurer by implication, but only by clear and explicit language, and that by the use of the words quoted this respondent became liable only for its own negligence. Mulvaney v. King Paint Mfg. Co., 256 Fed. 612, 167 C. C. A. 642; Young v. Leary, 135 N. Y. 569, 32 N. E. 607; The Junior (C. C. A.) 279 Fed. 407; Kohlsaat v. Parkersburg & Marietta Sand Co. (C. C. A.) 266 Fed. 283, 11 A. L. R. 686; Wandell v. New Haven Trap Rock Co. (C. C. A.) 285 Fed. 339.

Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, is not an authority in this cause in opposition to the rule laid down in the cases hereinbefore cited, but is really an authority in support of such rule, because in the charter party construed in that case the assumption of responsibility was in clear and explicit terms.

The contention of the libelant that the use of the word "damage," in connection with the words "wharfage, watching, and towing," showed clearly and explicitly that the respondent was to assume the liability of an insurer, in contradistinction to that of a bailee, chargeable only with its own negligence, cannot fairly be allowed.

The words in connection with which the word "damage" is used represent matters for which the respondent as bailee was properly responsible, and to hold that the use of this one word "damage," hidden away as in a sense it is among those other words, changes the relation of the respondent from that of a bailee to that of an insurer, seems to me to do violence to the idea that the minds of the parties ever met on any such contract.

That there never was a meeting of the minds on any such a contract is shown by the fact that the Simmons Transportation Company expressly limited the use of the barge to "the insurance limits of New York Harbor" to protect itself; whereas, if by the contract it had been intended to charge the respondent as an insurer, the libelant would undoubtedly have required the respondent to bear the insurance in favor of the libelant, the same as it carefully provided that the respondent should be responsible for cargo insurance.

The use of the word "damage" in connection with the other words with which it is grouped must be considered with reference to them, and it undoubtedly referred to any damage which might accrue with reference to the matters therein referred to by reason of the negligence of the respondent or its neglect and failure to pay the same.

Libelant is not entitled to recover, unless it be shown that the damages to the barge were caused by the negligence of the respondent. The Junior, supra; Schoonmaker-Conners Co. v. Lambert Transp. Co. (C. C. A.) 268 Fed. 102; Dailey v. Carroll, 248 Fed. 466, 160 C. C. A. 476; C. F. Harms Co. v. Upper Hudson Stone Co., 234 Fed. 859, 148 C. C. A. 457.

[4] The facts with reference to the sinking of the barge, as appears from the evidence, are that the barge was in charge of a captain furnished and paid for by the libelant, the Simmons Transportation Company, whose duty it was to care for the barge, and among other things to attend to the pumping of said barge. Both of the companies were familiar with the union rules as to the hours of labor and pay of the captain, and as to the pay allowed to a captain for watching, and I hold that the watching, so called, for which the respondent was liable to pay both under the union rules and the terms of the charter party, was watching of the cargo, and not watching of the boat.

I further hold that it was the duty of the captain of the boat, as the representative of the libelant, to determine whether the boat was in a safe condition to leave for the night, and that the respondent was not liable if the accident occurred because, by reason of the absence of the captain during the night, the boat was left too long without pumping, if the respondent provided a safe berth and did not overload the barge. Hastorf v. Long, 239 Fed. 852, 152 C. C. A. 638; Dailey v. Carroll, supra; The Junior, supra.

[5] The respondent provided a reasonably safe berth for the barge at the south side of Pier No. 2, Hoboken, over 600 feet in from the head of the pier, in a good depth of water—what the captain of the barge described as a good berth—and the barge was not overloaded; therefore the respondent was not guilty of negligence.

The weather was clear and the water not unusually disturbed. The slip was a long one, not very wide, and was used by steamers. At about midnight the Ada A. came in, and her captain testified that at that time the lines of the Raymond M. White were all right; that when he arose, at about 6 o'clock in the morning, the Raymond M. White had torn away her lines and part of the pier with them, and was upside down in the slip.

[6] I am unable on the evidence to say that the barge was unseaworthy when delivered to the respondent, or to definitely fix the cause of the sinking; but the respondent is not obliged to show how the sinking happened. It is sufficient that it has shown that the sinking was not caused by its own negligence, and, such showing having been made, the burden is on the libelant to show the respondent's negligence. This it has failed to do. Hildebrandt v. Flower Lighterage Co. (D. C.) 277 Fed. 436.

A decree may be entered, dismissing the libel, with costs.