### CAUSEY et al. v. COTTMAN CO.
#### (two cases).

(Circuit Court of Appeals, Fourth Circuit.
April 14, 1926.)

#### Nos. 2472, 2458.

**1. Shipping ⬅⟶54.**

The law imposes on charterer of lighter, for use in hauling heavy stones, duty of exercising ordinary care and prudence for its safety.

**2. Shipping ⬅⟶54—Charterer of lighter held to have duty to remove vessel from dangerous position during storm, particularly where owner urged removal and offered to furnish tug for purpose.**

Where lighter was chartered for hauling stones, charterer *held* to have had duty to remove such vessel from dangerous place in bay, where it was anchored during storm, particularly where owner had urged him to do so, offering to furnish tug for removal.

**3. Shipping ⬅⟶54—Charterer, having left lighter in dangerous position during storm, cannot escape liability for negligence because scowman, employee of owner, was on vessel.**

Charterer of lighter being used to haul stones cannot escape liability for negligence in leaving scow in dangerous place during storm, because of fact that scowman, employee of owner, was left on vessel, where he could have done nothing to prevent injury to lighter.

**4. Partnership ⬅⟶6—Person advancing money on contract and sharing in profits held to constitute partner, making him responsible for negligence of other person interested in contract.**

Person participating in contract by advancing money for bills and sharing in profits *held* liable for negligence of other persons interested in contract as being partner in enterprise.

**5. Shipping ⬅⟶58(3)—Commissioner's award for lighter lost because of charterer's negligence, proceeding on theory of reproduction cost with annual depreciation charge, held correct.**

Commissioner's award for loss of lighter due to charterer's negligence, proceeding on theory of reproduction cost and charging annual depreciation, *held* correct.

Appeals from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Two separate libels by the Cottman Company against John S. Causey and others, wherein respondents filed cross-libels, tried together by consent. Decree for libelants, and respondents appeal. Affirmed.

John H. Skeen, of Baltimore, Md. (Emory, Beeuwkes & Skeen, of Baltimore, Md., on brief), for appellants.

L. Vernon Miller and George W. P. Whip, both of Baltimore, Md. (Jesse Slingluff, Marbury, Gosnell & Williams, and Lord & Whip, all of Baltimore, Md., on brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

WADDILL, Circuit Judge. The transactions involved in these two causes were so related to each other that they were by consent heard together in the District Court

and disposed of in a single opinion by separate decrees. They were on appeal heard together by this court, and will be disposed of here also in a single opinion. The cases in the District Court were decided in favor of the libelant in each case, from which decisions respondents appeal. The parties will be referred to in this court as libelant and respondents. The two cases grew out of the same facts, and were determined largely upon the same testimony.

John S. Causey and Harry W. Causey obtained a contract in 1923 from the United States government to place riprap around certain lighthouses on the Chesapeake Bay. The work, the subject of this litigation, was at Windmill Point Light, at the mouth of the Rappahannock river, on the western side of the bay, and consisted of depositing large stones, weighing from 1,000 to 5,000 pounds each, to form a breakwater to protect the foundations of the light. The stone was obtained in Baltimore and transported to the works upon which it was to be used in open lighters towed by tugs. The Causeys did not own any lighters or tugs, but hired them as required from the Cottman Company, the libelant herein. One of the lighters so hired was the C15, which, while anchored near the lighthouse in charge of a scowman employed by libelant, dragged her anchor in a storm and went aground, becoming a total loss. This is the first case, No. 2472.

With the C15 was lost a part of her cargo of stone and equipment belonging to respondents. In the effort to recover the lighter, respondents hired a tug and lighter from the Cottman Company, which did not render the service for which the vessel was employed; the loss of the stone and equipment caused considerable delay in the work and eventually a large loss on the contract. At the time of the loss of the C15, the respondents owed libelant, for tug and lighter hire, a balance of $4,700. Upon the question arising as to whose fault caused the loss of the lighter, respondents refused to pay the balance on their hire account, and the last-named suit, No. 2458, was instituted to recover the amount so due. Separate answers were made by the respondents in each case, and cross-libels filed therein denying all responsibility for the loss of the lighter C15, and charging that the loss was caused by libelant's fault. To the cross-libels, libelant filed its answer.

In the first-named case, respondents filed their counterclaim for the loss of stone and equipment and for damages arising from delay incident to the loss of the lighter and its contents, and respondents, John S. Causey & Sons, a copartnership composed of John S. Causey, Harry W. Causey, and George H. Causey, denied all liability in connection with the loss, as did respondents J. Langrall & Bro., Inc., and Leander Langrall. In the second-named cause, respondents also set up their counterclaim for the loss of stone and equipment and for delay as in the first-named case. In No. 2458, the second cause, libelant filed an itemized account for $4,766.36 and respondents a counterclaim for damages for $5,000. Each of the cases was dismissed as to all of the respondents save John S. Causey and Harry W. Causey, and the respondent Leander Langrall, who was held to be a partner with said John S. and Harry W. Causey; and the court, as against these three respondents, gave judgment for $5,004.67 in the last cause, being the decree of May 18, 1925, appealed from. In the first cause (known as the lighter case), the court having previously referred the same to a commissioner to ascertain the value of the lighter, who reported the same to be $7,600, by its decree of the 28th of December, 1925, appealed from, also gave judgment against the same three respondents for $8,470, with costs.

The assignments of error made in the two cases present for the consideration of the court the questions: (a) Whose fault caused the loss of the lighter C15; (b) the value of the lighter; (c) whether respondents were entitled to recover under their cross-libel either for the loss of stone and equipment on the lighter when lost or for damages arising from the delay in the work incident thereto; (d) whether the respondent Leander Langrall was a partner liable along with John S. and Harry W. Causey; (e) whether in the second-named cause the amount sued for on the hire account was correctly ascertained, and whether the respondent Leander Langrall was liable along with the Causeys for the sum so fixed; and (f) whether the respondents' defenses as hereinabove specified in the first case could be availed of as a defense in the second case.

First. From a mere statement of these assignments of error, it will be readily seen that they all depend upon a correct determination of the facts in the cases, as there is but little dispute as to the law affecting any of the subjects involved. The learned judge of the District Court, especially upon the merits of the controversy as affecting the loss of the lighter C15, and the liability of the respondent Leander Langrall, saw and

heard the witnesses testify orally in open court, and had full opportunity to judge of the accuracy and truthfulness of their several statements; and, while there was considerable conflict in the testimony, we can but feel that he reached a correct conclusion on each question. Certainly, under the facts here, we would not be warranted in substituting our judgment for that of the experienced judge, who had the better opportunity to intelligently reach a correct conclusion upon both matters.

[1] As we view and reflect upon the statements of the several witnesses, it seems the more manifest to us that the decision arrived at is correct and just. The lighter C15 was chartered by the respondents for the purpose of doing this dangerous and heavy work of transporting stone from Baltimore down the bay to Windmill Point Light, to be used in the construction of a breakwater. The service itself was such that required not only a strong lighter, but the most intelligent and prudent navigation of the vessel. It was, when at the scene of the work, virtually in the open bay, an especially dangerous place in case of storm. Corresponding vigilance and care should have been exercised to prevent damage to the same arising from weather conditions. The law imposed upon those thus chartering and using the lighter the duty of exercising ordinary care and prudence for its safety.

From the facts it appears that after loading the lighter at Curtis' Bay, Baltimore, with 350 tons of stone on the 8th of October, 1923, it was towed on the 9th down the bay about 6 p. m. that evening, to a safe anchoring place in the mouth of the Piankatank river. At this anchorage the lighter remained until Monday morning, the 15th of October, when it was towed by respondents' tug to Windmill Point Light, where it discharged 150 tons of stone, and was thereupon towed that evening a short distance, about a quarter of a mile, respondents say, from Windmill Point Light, to the leeward of the bar, and anchored, the scowman of the lighter remaining thereon; and Capt. Causey, in charge of the works, left in a tug, used in connection with the works, for Westland wharf, at the mouth of the Rappahannock river. On Tuesday, Capt. Causey returned to the scow, but, finding it too rough to work, returned to the Westland wharf. The bad weather continuing, he did not go to the scow on Wednesday. On Thursday, he went out to the scow, but still found it too rough

to work, and again returned to the wharf. The weather still continuing bad on Friday, he did not go out to the scow, but remained ashore; and about midnight on Friday night, the 19th of October, the storm having increased in intensity, the wind changing and blowing hard from the northwest, the anchor dragged, causing the scow to drift. Twelve hours later it had drifted some 15 miles, when the scowman was taken off by a fishing-boat, and the scow subsequently grounded.

Respondent Causey telephoned Friday evening to the libelant and informed it of the disappearance of the scow, and requested that a tug be sent with another scow to take the place of the C15. This the libelant did, dispatching the tug Margaret with another scow, and, although the Margaret exercised every effort to save the C15, it was found impossible so to do, and the latter became a total loss.

On Wednesday, the 17th of October, another tug of the libelant, commanded by Capt. Conway, passed the lighter, and, upon returning, after taking its tow up the river, advised Capt. Causey of the existence of the heavy weather in coming in, and offered to bring the C15 into harbor, which offer respondent Causey declined, saying that the weather would soon moderate sufficiently to resume work, and he would lose too much time in pulling the scow in and out. Capt. Conway then called up the libelant's office at Baltimore, and he was instructed by that office to tell Capt. Causey that the weather was too rough for the C15 to be lying in the bay, and that the company did not desire it done. Capt. Causey still refused to allow the lighter to be moved.

[2] The law imposed upon respondents the duty of at least exercising ordinary care, that is to say, reasonable diligence, to protect and safeguard the lighter intrusted to it, having regard to the circumstances under which it was being used, and they should not have left the same in an exposed and unsafe place, as shown by the testimony in the case, from Tuesday morning until Friday night. During this period the lighter should have been moved to a more sheltered and less dangerous berth, which could have been easily done. Respondents should have taken care to see that this vessel without motive power intrusted to its care was removed, and certainly this should have been done when the libelant urged the same, offering to furnish its own tug to accomplish the desired removal. The Carroll, 248 F. 475, 160 C. C. A. 485 (C. C. A. 2d Circuit); Nicholson

v. Erie R. R., 255 F. 54, 55, 166 C. C. A. 382; Empire Brick & Supply Co. v. Hines, 300 F. 683, 685 (C. C. A. 2d Circuit).

[3] Nor can respondents escape liability here, where their own negligence is plainly established, by seeking to place the blame for what happened on the scowman, because he was an employee of the libelant. We do not well see that the scowman could have done more than he did, or that any act or omission on his part was an efficient cause in bringing about the loss of the scow. Respondents knew, and had called to their attention, the perilous situation in which the scow was placed, in ample time to have avoided loss, and chose to take chances in such circumstances. That the anchor did drag in the violence of the storm to which it was subjected on the night of the 18th of October, 1923, is not surprising, and the fact that it might do so should have been foreseen by those charged with the control and use of the lighter, and should have served to admonish them to exercise the utmost precaution to protect the same, and to do so at the earliest moment, and see that the danger to the lighter did not increase, as might reasonably have been anticipated from the prevailing weather conditions. Good seamanship required that this should have been done promptly, and to have neglected to efficiently look after this drifting lighter, with a view of taking it to an anchorage of safety, in addition to allowing it to remain at an exposed place of anchorage from Tuesday to Friday night, was inexcusable, and, for losses arising therefrom respondents, and not libelant, are responsible.

[4] Second. The testimony as to respondent Leander Langrall being responsible along with the two Causeys is, to our mind, clear and conclusive. He was so related to the transactions, in the light of his connection with the two respondents Causey in this work, and his past association with them in other contracts of a similar character, as to clearly make him liable along with them, certainly so far as third persons are concerned, in this particular transaction. Under this contract he participated in carrying out the same, advancing money to pay bills for the tug and lighter, and for other purposes, and was to have shared in the profits as he had done under other similar contracts. On this subject the learned judge of the District Court found as follows:

"I think, however, that the evidence justifies the conclusion that Mr. Leander Langrall was a partner in the enterprise. He,

with this contract, as with a half a dozen others, had an informal arrangement by which he was to advance money and get a part of the profits. He followed out that arrangement here. He advanced money, paid bills, not only in this contract, but also in other contracts. He, under those circumstances, having a close acquaintance and friendship with the Causeys, took part in some of the details and arrangements. He notified the libelant when the scows were loaded and ready. The libelant was notified to send the bills to Langrall, and the bills were so sent, as I recall it, in Langrall's name. Langrall paid them. After the loss of the scow, Mr. Langrall agreed to do whatever Causey said was right. I think that under those circumstances there is more than a bare advancing of money and a sharing in the profits. I think there was a holding out and a participation that justifies the conclusion that Langrall was a partner in the enterprise so far as Cottman was concerned, and I am far from holding, because it is not necessary to make any holding on the point, that Langrall is not a partner in the enterprise so far as the Causeys are concerned. * * * *"

With this finding and conclusion of the District Court we are in full accord.

Third. As to the defenses set up in the cross-libels in each case, in the nature of counterclaims, arising as well by reason of the loss of the lighter, as by the alleged cause of delay in the completion of the work arising therefrom, it may be said that these defenses fall upon this court's holding that the respondents were solely liable for the loss of the scow.

[5] Fourth. In considering the amount of the award made by the court in the first-named cause for the loss of the scow, it may be noted that particular question was referred by the court to an intelligent commissioner, John B. Deming, a member of the Baltimore bar, who, after taking much testimony of experts, and men of large experience in such matters, found the sum of $7,600 was a proper allowance to make for the value of the vessel, as of the 27th of October, 1923. The commissioner, in making his award, followed the decision of this court in The I. C. White, 295 F. 593, and a decision of the Supreme Court in Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890 (April 20, 1925), and proceeded upon the theory of the reproduction cost of the vessel

rather than its market value, and charged against the same for depreciation at the annual rate of 3 per cent. for five years and nine months, 15¾ per cent., $500, the balance being $8,000. He allowed a discount of 5 per cent., $400, in recognition of market conditions, leaving $7,600 as the value of the vessel.

The learned judge of the District Court approved the finding of the commissioner and decreed in favor of the libelant for the same with costs. In this finding we concur, as it seems to have been arrived at after much thought and intelligent consideration, and to our mind is a correct and fair conclusion as to the amount to be allowed.

Fifth. This brings us to the consideration of the amount due under the account sued for in the last-named cause, viz., tug and lighter hire, in connection with the execution of contract, to the date of the sinking of the lighter. The last-named cause was instituted to collect this claim, the itemized account filed with the libel being $4,766.36. For this sum the court gave the decree in the last-named cause appealed from, with interest and costs. There does not seem to be any serious dispute as to this amount being due, and the decree therefore is plainly correct.

The decrees of the District Court in both of the cases herein will be affirmed, with costs to the appellees.

Affirmed.