## THE D., L. & W. NO. 442.

## THE P. R. R. NO. 437.

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 99.

William F. Purdy, of New York City, for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. Appellant's barge King was made fast to the bulkhead of Pier 5, Bush Docks, in New York City harbor, on October 25, 1925. A steamer was lying in the slip between Piers 4 and 5, on the south side of Pier 5. There were two barges made fast also on the south side, P. R. R. No. 437 and D., L. & W. No. 442, but some distance further up in the slip toward the bulkhead. Storm warnings were received by the United States Weather Bureau in New York City at 4 p. m. Saturday, October 24, 1925, telling of a southeast storm which "will move northeastward with increasing intensity and cause strong southeast and south winds, probably reaching gale force to-night, shifting to west and northwest Sunday morning." At about 5 o'clock that afternoon, the bargee of the P. R. R. No. 437 called his office by telephone for instructions, and was told that he might go home and leave the barge until Monday morning. On Sunday morning an advisory storm warning was received at 9:30 a. m. to the effect that a storm of marked intensity over the lower Lake region and middle Atlantic states would move east-northeastward, with further increasing intensity, and become a severe storm. Notice of this warning was given, by telephone, to the Pennsylvania Railroad Company at 10:30 a. m. on October 25th. The storm came and the wind shifted from southeast to northwest at 1 p. m., and blew on an average of 54 miles an hour between 1 and 2 p. m., with an extreme velocity of 83 miles, and from 2 to 3 o'clock on the average of 59, with an extreme velocity of 60 miles, and from 3 to 4 on an average of 56, with an extreme velocity of 72, and from 4 to 5 an average of 51, with an extreme velocity of 54. The wind during this time was northwest to west. At 4:30 p. m. the P. R. R. No. 437 broke away from her moorings some 3½ hours after the storm had been blowing at a gale force from north to northwest, and, as she drifted up the slip, broke the lighter D., L. & W. No. 442 from her moorings, and the two vessels collided

with appellant's barge King, lying properly moored at the bulkhead. The combined weight of the two barges squeezed the King against the bulkhead and caused the damage for which this libel was filed.

The District Judge dismissed the libel upon the authority of J. V. Cain v. P. R. R. No. 226 (C. C. A.) 15 F.(2d) 1017, but that authority does not prevent a recovery. There we held that the damage resulted from force majeure, and that there was no negligence and no liability, either in rem or in personam. From the happening described, resulting in the damage to the King, the presumption of fault arises from the fact that the King was struck and damaged by these barges adrift. The Louisiana, 70 U. S. (3 Wall.) 164, 18 L. Ed. 85; The Bertha F. Walker (C. C. A.) 220 F. 667; The Banner (D. C.) 225 F. 433; Eastern Dredging Co. v. Winnisimmet Co. (C. C. A.) 162 F. 860. The circumstances do not give free rise to the defense of inevitable accident, as pleaded by the P. R. R. No. 437. The wind at the time the vessels broke adrift was 64 miles per hour, and had been blowing much stronger for some time. The lines of the P. R. R. No. 437 were strong enough to hold the boat for several hours during the height of the storm, but finally wore out and failed, because no assistance was rendered. There were 3½ hours during which the barge was riding in a heavy storm, and during which its owner, the Pennsylvania Railroad, had notice of the storm in ample time to send aid, or to make inspection. Causey v. Cottman (C. C. A.) 12 F.(2d) 558; Empire Brick & Supply Co. v. Hines (D. C.) 300 F. 683; The Junior (C. C. A.) 279 F. 407. With knowledge by the owner of the exposed location of the barge, when the northwest storm came, warning of which had been foretold, the exercise of reasonable care required either the removal of the barge to shelter or keeping the bargee on board to care for the lines and renew them if action demanded. The Carroll (C. C. A.) 248 F. 475; The Kathryn B. Guinan (C. C. A.) 176 F. 301. The condition of the lines after the occurrence of the accident indicated that they did not break suddenly, but after a period of chafing and wearing.

The King was properly moored; she had as lines, one forward and one aft. These lines had a short lead. But leaving the barge unattended, with notice of the approaching storm, is sufficient fault upon which to base liability. Nicholson v. Erie R. Co. (C. C. A.) 255 F. 54; Doherty v. Pennsylvania R. Co. (C. C. A.) 269 F. 959, 963; The Junior, supra.

The appellant properly proceeded with his libel in rem to recover damages for the injury thus caused under these facts. Turner v. United States (C. C. A.) 27 F.(2d) 134; The John G. Stevens, 170 U. S. 113, 120, 18 S. Ct. 544 (42 L. Ed. 969); Workman v. City of New York, 179 U. S. 552, 21 S. Ct. 212, 45 L. Ed. 314. The decree will be granted against the barge P. R. R. No. 437.

Decree reversed.