244

## FULTON LIGHTERAGE CO. v. NEW YORK & CUBA MAIL S. S. CO.

### No. 157.

Circuit Court of Appeals, Second Circuit.
April 6, 1936.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Adrian J. O'Kane, both of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

PER CURIAM.

The steamship Orizaba was moored on September 19 and 20, 1928, on the north side of Pier 14, East River. The barge Ripley, 85 feet long, 31½ feet beam, and with 7 feet freeboard when light, with a deckhouse extending 9 feet above the deck, was shifted on September 19, 1928, at 9 a. m. by a tug from Pier 15 to a berth alongside No. 1 hatch of the Orizaba on the north side of Pier 14. The barge was made fast by four 4½-inch lines, and was breasted off from the side of the ship by oak fenders 6 feet long and 7 feet thick. The wind at the time was from the northeast 13 to 14 miles per hour. Piers 14 and 15 are covered piers and thus protected somewhat from a blow.

The captain of the Ripley, before his barge was shifted, said he questioned its safety in a berth alongside the steamship, but he did not refuse his consent to such change of berth. Sugar bags were discharged from the steamship to the barge by hand trucks over a trucking plank, which was uncovered and had no guard rails. At 11:30 a. m. on the 19th it rained hard, and the unloading to the barge was suspended for the day. Discharge was resumed the following morning and completed at 10:30 a. m., and the Ripley was towed out of the slip.

The appellee claims the barge was damaged on the 19th. After the barge was shifted, the highest velocity of the wind that day was 20 miles between 3 and 5 p. m., but the average was 17.1 miles per hour, as shown by the weather reports.

Twenty days later, October 9, 1928, after a survey had been held on the barge, appellee claimed damage for injury to the Ripley. The theory of the claim is that rough seas caused by the wind made the barge roll and surge against the side of the steamship with such force that "fenders went through the side of the house," that the barge "went over sometimes as high as 5 or 6 feet," and that "the roof would bounce against the overhang of the ship and when she rolled against the bottom would hit against the bottom of the ship." The survey failed to show any damage caused by fenders going through the side of the house, but it showed that the bilge log on the portside forward of the barge was split, although the Ripley was lying starboard side to the steamship.

On reading this record, we are required to reverse the decision below on the District Judge's findings of fact. The weather conditions on the day before and during the time the barge lay alongside the steamship establish that the force of the wind could not have caused the rolling and surging of the vessel in any such manner as claimed, due to rough weather in the protected slip. At no time was the wind sufficiently strong in velocity. The claim of rough water sufficient to cause the claimed contact with the side of the steamship with the consequent damage is grossly exaggerated and incredible. We cannot believe the barge would have been pounding in the manner testified to by her captain without a protest from him or insistence that his barge be taken away to a safer berth. He had a duty to protect his

barge. The Britannia, 252 F. 583 (C.C.A. 2); Dailey v. Carroll, 248 F. 466 (C.C.A.2). It likewise seems physically impossible that the bottom of the Ripley ever came in contact with the side of the steamship. If the Ripley rolled sufficiently to bring her bottom or bilge log, which is under the water, into contact with the side of the steamship, she would probably have knocked her deckhouse off when she rolled back. The character of the injury to the deckhouse disputes the claim.

We find no fault or neglect requiring appellant to respond in damages for whatever injury the barge sustained. The E. A. Packer, 185 F. 476 (C.C.A.2).

Decree reversed.