## TUCKER v. READING CO.
### No. 226.

Circuit Court of Appeals, Second Circuit.
April 9, 1942.

Christopher E. Heckman, Foley & Martin, and James A. Martin, all of New York City, for appellant.

Thomas H. Middleton and Hill, Rivkins & Middleton, all of New York City, for appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

PER CURIAM.

An affirmance of the decree in this case need depend only upon a single question of fact; i. e., whether Centano, the bargee of the Elmer, brought her alongside the Nash before the tug, Bern, returned. If he did, nothing remains of the argument that unaided he could not relieve the Elmer after she was caught upon the port stern corner of the Nash where she was injured; for he simply failed to act in season. The judge did not, it is true, make a finding specifically upon the question, but the evidence does not leave any doubt. The bargee's testimony was itself confused and conflicting throughout; upon his direct he said that the Elmer was damaged by the Bern when she fetched the two new boats to the flotilla a little after midnight. That was the story in the libel and undoubtedly what he had told the proctor. Upon his cross-examination he was so plainly confused as to what did happen, that although he still insisted that the Bern had done the damage, the libellant does not now argue that she did, but seeks to charge her only because she left the flotilla over the change of tide and the bargee helpless to avoid being impaled, as it were, upon the Nash. The bargee did indeed swear to that as well as to the injury caused by the tug, but the testimony against him was overwhelming. Both the master of the tug and its deckhand said that when they got back the Elmer was alongside the Nash, her hawser running across the after end of the Nash's deckhouse so as to lock in the Nash's own bargee. Abel, the bargee of the Laurelton, the outer barge of the first tier, said that when the Bern came back his boat was lying "straight up and down the river." Clements, bargee of the Daly 65, the single barge in the third tier, although at first confused, insisted that the Elmer was "flush" with the Nash, and was not shaken on cross-examination. McCarthy, bargee of the Nash, told of being locked in his deckhouse by the Elmer's ·hawser and said that the Elmer was "up alongside of the Nash," before the Bern arrived.

The tug was not at fault in leaving the flotilla at the pier-end over two changes of tide, when the weather was fair and all that was needed was a simple letting out of the hawser, as was the case. We have held again and again that as to the shifting of lines and other "internal economy" of a barge, the tug may properly assume that the bargee is competent and leave her care to him—always excepting of course foul weather, changes of weather or other events which might endanger her beyond the resources of his limited skill. Dailey v. Carroll, 2 Cir., 248 F. 466; Clyde Lighterage Co. v. Pennsylvania R. Co., 2 Cir., 258 F. 116; The Junior, 2 Cir., 279 F. 407; The Castleton, 2 Cir., 64 F.2d 11; The Trenton, 2 Cir., 72 F.2d 283; Fulton Lighterage Co. v. New York & Cuba M. S. S. Co., 2 Cir., 83 F.2d 244. For this reason we are not called upon to say whether, if the tug had been at fault, that fault ought not to be considered a "proximate cause" of the injury because of the bargee's supervening fault.

Decree affirmed.